IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL NO. 19-267 |
| BRIAN HOWELL | |

**MEMORANDUM OPINION**

**Rufe, J.**                                                                                                                                        **June 7, 2022**

On October 5, 2020, Defendant Brian Howell pled guilty to one count of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). In the Plea Agreement, the parties stipulated to certain facts regarding Howell's collection of child pornography that increased the applicable guidelines sentencing range.[1]

At sentencing, on November 4, 2021, the government represented that this collection contained more than 11,000 unique depictions of child pornography.[2] Howell personally acknowledged that he downloaded, possessed, and viewed this pornography.[3] The Court sentenced Howell to 97 months of incarceration, the bottom of the guidelines range for his offense.[4] Howell has filed a *pro se* appeal from the judgment of conviction and sentence. This appeal remains pending before the Third Circuit, where counsel has been appointed to represent

---

[1] In particular, Howell stipulated that his collection included pornography of children under the age of 12, that this pornography included depictions of sadism, masochism, or violence against children, and that it contained more than 600 images and videos showing child pornography. Change Plea Tr. [Doc. No. 69] at 24; Plea Agreement [Doc. No. 40-1] ¶¶13 (b), (c), (e).

[2] Sentencing Tr. [Doc. No. 70] at 10, 27, 31.

[3] *See* Sentencing Tr. [Doc. No. 70] at 19, 26.

[4] *See* Sentencing Tr. [Doc. No. 70] at 5, 27, 41, 49; J&C [Doc. No. 52] at 2.

him.[5] Howell has filed in this Court an Emergency Motion for Compassionate Release, along with several letters of support. For the reasons stated herein, Howell's motion will be denied.

## I. LEGAL STANDARD

"A court generally may not correct or modify a prison sentence once it has been imposed, unless permitted by statute or by Federal Rule of Criminal Procedure 35."[6] One statute that permits such modifications is 18 U.S.C. § 3582(c)(1)(A)(i), which, as amended by the First Step Act of 2018, allows "prisoners the right to file their own motions for a sentence reduction if they first exhaust the statute's procedures for initially making a request to the warden to file a motion on their behalf."[7] Once a defendant has satisfied the exhaustion requirement, the court may reduce a term of imprisonment based on a finding that "the sentence reduction is (1) warranted by 'extraordinary and compelling reasons'; (2) 'consistent with applicable policy statements issued by the Sentencing Commission';[8] and (3) supported by the traditional sentencing factors under 18 U.S.C. § 3553(a), to the extent they are applicable."[9] The defendant bears the burden of showing that relief is warranted.[10]

---

[5] *United States v. Howell*, App. No. 21-3137 (3d. Cir. filed Nov. 17, 2021).

[6] *United States v. Van Sickle*, No. 18-250, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020) (citing *United States v. Penna*, 315 F.3d 509, 511 (9th Cir. 2003)).

[7] *United States v. Hill*, No. 19-38, 2020 WL 2542725, at *1 (D. Conn. May 19, 2020) (citing *United States v. Almontes*, No. 05-58, 2020 WL 1812713, at *1 (D. Conn. April 9, 2020)).

[8] While any sentence reductions under § 3582 (c)(1)(A) must be "consistent with applicable policy statements issued by the Sentencing Commission," the existing policy statement issued by the Sentencing Commission is "not applicable—and not binding—for courts considering prisoner-initiated motions." *United States v. Andrews*, 12 F.4th 255, 259 (3d Cir. 2021); 18 U.S.C. § 3582 (c)(1)(A).

Nevertheless, District Courts may "consult[] . . . the [Sentencing Commission's] policy statement to form a working definition of 'extraordinary and compelling reasons.'" *Andrews*, 12 F.4th at 260.

[9] *Andrews*, 12 F.4th at 258 (quoting 18 U.S.C. § 3582(c)(1)(A)).

[10] *See United States v. Sellers*, No. 10-434, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020); *United States v. Resnick*, No. 14-810, 2020 WL 1651508, at *3 (S.D.N.Y. Apr. 2, 2020) (citing *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992); *United States v. Clarke*, No. 09-705, 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010)).

## II. JURISDICTION

The Court's jurisdiction to address Howell's motion is limited by his pending appeal.[11] "[A] federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously. The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."[12] The Court is not aware of any cases determining whether a district court has authority to rule on a motion for compassionate release while an appeal is pending. However, even if the Court lacks jurisdiction, when "a motion is made for relief that the court lacks authority to grant because of an appeal that remains docketed and pending," the Court has discretion to "(1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue."[13] The Court will consider the merits of the motion.

## III. DISCUSSION

### A. Exhaustion

Under 18 U.S.C. § 3582, as modified by the First Step Act of 2018, a prisoner may seek compassionate release either (1) "upon motion of the Director of the Bureau of Prisons;" or (2) upon motion of the defendant, after (a) "the defendant has fully exhausted all administrative

---

[11] Although no party has raised the issue of jurisdiction, the Court must consider it *sua sponte*. "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).

[12] *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982).

[13] Fed. R. Crim. P. 37(a); *United States v. Riggins*, No. 06-700-1, 2022 WL 704201, at *3 (E.D. Pa. Mar. 9, 2022).

rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf;" or (b) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."[14] Howell claims that he applied to the Bureau of Prisons for compassionate release, and was denied.[15] The government places the date of Howell's application to the BOP on December 7, 2022, and agrees that Howell satisfied the 30-day exhaustion requirement before filing.[16]

### B. "Extraordinary and Compelling" Reasons Warranting a Sentence Reduction

Howell presents several reasons that he characterizes as "extraordinary and compelling" justifications for a reduction of his sentence.[17] Howell argues in his motion that he suffers from asthma and hypertension, and that these conditions in a prison environment significantly increase his risk of a severe COVID-19 infection.[18] In his reply, Howell also raises complaints about his representation at sentencing and argues that these complaints contribute to an "extraordinary and compelling" reason for release.[19] To the extent that Howell argues that his sentence is "incorrect" or challenges the constitutional effectiveness of his counsel, that challenge cannot be considered in a motion for compassionate release.[20] The Court will therefore address Howell's primary arguments regarding his health.

---

[14] 18 U.S.C. § 3582(c)(1)(A).

[15] Mot. Compassionate Release [Doc. No. 58] at 1.

[16] Govt.'s Resp. Opp'n Mot. Compassionate Release [Doc. No. 59] at 4–5.

[17] Howell and the government also present several arguments as to the applicability of the traditional sentencing factors under 18 U.S.C. § 3553(a). For the reasons set forth in this section, the Court does not reach these factors.

[18] Mot. Compassionate Release [Doc. No. 58] at 1–2.

[19] Def.'s Reply [Doc. No. 63] at 5–6.

[20] "§ 3582(c)(1)(A) provides a mechanism to seek a reduction in the term of a sentence, not to challenge its validity." *United States v. Handerhan*, 789 F. App'x 924, 926 (3d Cir. 2019). Ineffective assistance of counsel may be asserted either on direct appeal or through a motion for relief under 28 U.S.C. § 2255, although the Supreme

It is difficult to overstate the impact that COVID-19 has had on the criminal justice system. However, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."[21] The Third Circuit has emphasized that "the existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit."[22] "Rather, Defendant must establish that the risks to him, in light of his individual medical conditions and other circumstances, are so extraordinary and compelling that [the Court] should release him."[23]

Howell claims that he suffers from asthma and hypertension.[24] The CDC has recognized that these two conditions may heighten an individual's risk of a severe COVID-19 infection under some circumstances. Specifically, the CDC indicates that asthma can increase a person's risk "if it's moderate to severe," and hypertension may "possibly" increase a person's risk profile.[25]

The government disputes the severity of Howell's asthma and argues that Howell does not appear to suffer from hypertension.[26] Howell's medical records reflect that he has been given

---

Court has noted that "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

[21] *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (citation omitted).

[22] *United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020).

[23] *United States v. Rodriguez*, 468 F. Supp. 3d 681, 684 (E.D. Pa. 2020).

[24] Mot. Compassionate Release [Doc. No. 58] at 1–2.

[25] CENTERS FOR DISEASE CONTROL AND PREVENTION, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions html/ (last visited June 6, 2022).

[26] Govt.'s Resp. Opp'n Mot. Compassionate Release [Doc. No. 59] at 5.

an albuterol inhaler for use "as needed to prevent/relieve [an] asthma attack."[27] However, these records do not show blood pressure readings indicative of hypertension. According to the BOP's records, Howell's blood pressure was last taken on June 7, 2021, at which time it measured 125/77 mm Hg.[28] Howell's systolic measurement on that date was mildly elevated over the 120/80 threshold for normal adult blood pressure, but far from hypertensive.[29] Howell claims, however, that these records are inaccurate, and that he was informed by Nurse Practitioner Kistler and two nurses that he had "high blood pressure readings."[30]

The Court does not need to make a finding regarding the accuracy of Howell's medical records. Even if Howell suffers from asthma and hypertension as he claims, these conditions alone do not present an extraordinary and compelling reason for his release. In cases decided after the development of the COVID-19 vaccine, courts in this district "have consistently denied compassionate release to movants premising their requests on [asthma and hypertension]."[31] Howell has been vaccinated against COVID-19;[32] in recent cases courts in this district have held that the low COVID-19 positivity and high vaccination rates at FCI Fort Dix mean that even

---

[27] Ex. A to Resp. Opp'n Mot. Compassionate Release [Doc. No. 60] at ECF page 41.

[28] Ex. A to Resp. Opp'n Mot. Compassionate Release [Doc. No. 60] at ECF page 48.

[29] While the CDC notes that different providers may use different thresholds for hypertension, a diagnosis of hypertension indicates a consistent blood pressure of at least 130/80 or higher. CENTERS FOR DISEASE CONTROL AND PREVENTION, *People with Certain Medical Conditions*, https://www.cdc.gov/bloodpressure/about htm (last visited June 6, 2022).

[30] Def.'s Reply [Doc. No. 63] at 3–4.

[31] *United States v. Garcia*, No. 12-304-1, 2021 WL 2269693, at *4 (E.D. Pa. June 3, 2021); *see id.* at 5 (finding that a prisoner who claimed that asthma and hypertension placed him at risk of a severe COVID-19 infection did not present an extraordinary and compelling reason for his release where he "has not presented any reason to depart from the overwhelming amount of case law denying compassionate release motions premised on claims of pre-existing asthma and/or hypertension, especially considering that his medical records do not indicate that he has actually been diagnosed with either condition.").

[32] Ex. A to Resp. Opp'n Mot. Compassionate Release [Doc. No. 60] at ECF pages 21, 27, 30, 31, 40.

unvaccinated prisoners with hypertension and asthma do not present extraordinary or compelling reasons for COVID-19 compassionate release.[33]

Additionally, Howell does not plead that either his health or the status of COVID-19 in the federal prison system has changed materially since he was sentenced in November 2021. Although Howell, in arguing that FCI Fort Dix is inherently unsafe, claims that "inmates in the federal system are testing positive [for] COVID-19 at a rate of 25%," the testing rates he cites are from October of 2020.[34] These statistics are outdated. As of the date of this Order, there are only three confirmed active cases of COVID-19 at FCI Fort Dix—all among staff members.[35]

## IV. CONCLUSION

Howell's pending appeal of his criminal sentence limits the Court's jurisdiction to alter that judgment. Nonetheless, Federal Rule of Criminal Procedure 37(a) permits the Court to consider and to deny Howell's motion for compassionate release. Taking the medical facts pled in Howell's motion as true, and assuming that Howell suffers from sufficiently severe asthma and hypertension to raise his risk of contracting a serious COVID-19 infection compared to the average person, Howell still has not presented an extraordinary and compelling reason for a reduction of his sentence at this time. Therefore, Howell's motion for compassionate release will be denied.

An order will be entered.

---

[33] *See United States v. Owens*, No. 20-467, 2022 WL 1045214, at *3 (E.D. Pa. Apr. 7, 2022) (internal citations omitted) (holding that an inmate at FCI Fort Dix who "suffers from obesity, asthma, and hypertension which make him more vulnerable to serious illness or death from COVID-19," did not present an extraordinary and compelling reason for compassionate release "because "the risks posed to his health [were] minimal" due to the high vaccination rate and low case rate at FCI Fort Dix).

[34] Mot. Compassionate Release [Doc. No. 58] at 2–3.

[35] *See* BUREAU OF PRISONS, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited June 6, 2022).